UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HYLKO, JR.,

    Plaintiff,

v.

Case No. 15-12680

Hon. John Corbett O'Meara

JOHN HEMPHILL and
U.S. STEEL CORPORATION,

    Defendants.
_____/

## OPINION AND ORDER

Before the court are John Hemphill and U.S. Steel Corporation's motions for summary judgment, which have been fully briefed. Pursuant to LR 7.1(f)(2), the court did not hear oral argument.

## BACKGROUND FACTS

Plaintiff David Hylko, Jr., is suing a former co-worker, John Hemphill, and his former employer, U.S. Steel Corporation. Plaintiff alleges that he was subject to a hostile work environment based upon same-sex sexual harassment. Plaintiff's complaint alleges claims under Title VII and the Michigan Elliott-Larsen Civil Rights Act, along with state tort claims of assault, battery, and intentional infliction

of emotional distress.

Plaintiff began working at U.S. Steel in 2011. Shortly after he was hired, he was deployed to Afghanistan with the U.S. Army. Upon his return in 2012, he was promoted to Shift Manager in the Steel and Casting Division. Plaintiff's duties primarily involved supervising maintenance employees.

In November 2013, Plaintiff was reassigned to the "BOP" area ("Basic Oxygen Process"). At the BOP, Plaintiff began working directly with Defendant Hemphill, who was the Process Coordinator. Hemphill oversaw the BOP maintenance activities and supervised hourly employees. As a Shift Manager, Plaintiff reported to BOP Area Manager, Mark Jobin, who reported to Division Manager Tom Gunnell, Jr. Because Plaintiff was a newer Shift Manager, he worked under Hemphill's "tutelage." Hemphill trained Plaintiff and assigned him duties.

According to Plaintiff, Hemphill engaged him in conversations of a sexual nature from the beginning. Plaintiff testified that Hemphill had an "extreme fascination" with his sex life (Plaintiff lived with two women) and "my employment hinged on his approval of me." Hylko Dep. at 88-89. Plaintiff ostensibly played along; for example, he showed Hemphill a photo of his girlfriend, who was topless and holding a sign that said "John Hemphill." Id. See

also Hylko Dep. at Ex. 4.

Plaintiff testified that Hemphill engaged in several inappropriate acts from November 2013 to mid-January 2014. Plaintiff stated that Hemphill grabbed his penis while they were in an elevator; once they got out of the elevator, Hemphill did it again, laughing and saying "Look, he doesn't even flinch." Id. at 121.

Plaintiff testified that Hemphill would make comments mocking his military service, like "I don't know how you . . . didn't get anybody killed in Afghanistan. You couldn't lead your way out of a wet paper bag." Id. at 125-26. Hemphill would refer to Plaintiff as "Stripes" or "Lieutenant Dan." On two occasions Hemphill grabbed Plaintiff as if to punch him; once Hemphill said something to the effect that he should take Plaintiff down to the river and "beat his ass." Id. at 126. Then Hemphill grabbed Plaintiff's buttocks and said that he had a "nice firm ass." Id. at 126-129.

Plaintiff contends that Hemphill would try to "emasculate and embarrass" him by ordering him to get him coffee and joking that he was "well trained." Id. at 139-40. Plaintiff also recounted an incident when Hemphill had a banana sticking out of the fly of his pants. Hemphill walked up to another employee in Plaintiff's office and poked him with the banana. Id. at 135-37.

In mid-January of 2014, Hemphill asked Hylko to prepare safety

documentation regarding an incident that had occurred in December 2013. Believing that such documentation would be a fabrication, Hylko refused. On January 15, 2014, Plaintiff told Division Manager Tom Gunnell about Hemphill's request regarding the safety documentation. In that meeting, Plaintiff also became upset and complained about Hemphill touching his buttocks, making him fetch coffee, and the banana incident. Gunnell Dep. at 28-31. Gunnell told Plaintiff he could go home for the day.

Gunnell then contacted Mark Jobin, the BOP Area Manager, to inform him of Plaintiff's complaints. Gunnell also called Director of Employee Relations Manager James Van Buren, who suggested that Plaintiff and Hemphill be separated at work. That afternoon, Gunnell and Jobin met with Van Buren in his office to discuss Plaintiff's complaints.

The next day, Gunnell, Jobin, Van Buren, and Stephen Kovalchik (human resources) met with Plaintiff. See U.S. Steel Ex. 19. Gunnell advised Plaintiff that he could return to work in a different area of plant, the environmental department. Plaintiff appeared satisfied and agreed that the new assignment was acceptable to him. Gunnell Dep. at 44.

Gunnell, Van Buren, and Kovalchik met with Hemphill, who admitted some of Plaintiff's allegations, including that he had grabbed Plaintiff's buttocks,

although he claimed that he was only joking around. See U.S. Steel Ex. 20. Van Buren concluded that Hemphill's conduct was inappropriate and in violation of U.S. Steel policy. Id.; Van Buren Dep. at 37. Hemphill was given a week's unpaid suspension and demoted to Shift Manager, albeit with no further loss in pay. He was also required to take a "people skills" class and given a verbal warning.

After Hemphill served his unpaid suspension, he met with Plaintiff, Gunnell, and Kovalchik on January 28, 2014. According to Van Buren, both men had independently agreed that they could work together. At the meeting, Hemphill apologized and Plaintiff accepted his apology. Hylko Dep. at 161. After the meeting Hemphill and Plaintiff had "limited communication." Id. Plaintiff no longer worked directly with Hemphill and was instructed to report any further issues. After reporting Hemphill's behavior in January 2014, Plaintiff had no further problems with Hemphill. Hylko Dep. at 157-58, 202-204.

On April 6, 2014, there was a serious crane accident at U.S. Steel, causing a fatality. Plaintiff was involved in the response to the accident, shutting off the oxygen and natural gas lines and evacuating the area. Plaintiff resigned from his employment on April 9, 2014. Plaintiff testified that the crane accident was not the only reason for his resignation, but that it was a "combination of factors," including working with Hemphill.

# LAW AND ANALYSIS

## I. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## II. Same-Sex Sexual Harassment

Plaintiff alleges hostile work environment claims against U.S. Steel under Title VII and against both Defendants under the Michigan Elliott-Larsen Civil Rights Act. The analysis under both statutes is similar, and Michigan courts often seek guidance from federal law when interpreting Michigan's anti-discrimination statutes. See, e.g., Victorson v. Department of Treasury, 439 Mich. 131, 142-43 (1992); Robinson v. Ford Motor Co., 277 Mich. App. 146 (2007). "A plaintiff may establish a violation of Title VII by proving that the discrimination based on

sex created a hostile or abusive work environment." Williams v. General Motors Corp., 187 F.3d 553, 560 (6th Cir. 1999). To establish a prima facie case of a hostile work environment based on sex, a plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based on his sex; (4) the harassment created a hostile work environment; and that (5) the employer is vicariously liable. Id. at 560-61.

Although Title VII and the ELCRA cover hostile environment claims based upon same-sex harassment, "an individual does not make out a claim of sexual harassment 'merely because the words used have sexual content or connotations.'" Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 765 (6th Cir. 2006) (quoting Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80 (1998)). Rather, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. A plaintiff claiming same-sex harassment may establish an inference of discrimination in the following ways: "(1) where the harasser making sexual advances is acting out of sexual desire; (2) where the harasser is motivated by general hostility to the presence of men in the workplace; [or] (3) where the plaintiff offers 'direct comparative evidence about how the alleged

harasser treated members of both sexes in a mixed-sex workplace.'" Id. See also Robinson, 277 Mich. App. at 157. "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* . . . because of . . . sex.'" Oncale, 523 U.S. at 81 (emphasis in original).

Here, Plaintiff has not raised an inference that he was discriminated against because of his sex. He has not offered comparative evidence about how Hemphill treated members of both sexes, because there were no women on Hemphill's team in the BOP. Hemphill Dep. at 97. He also has not presented evidence that Hemphill was motivated by "general hostility" to the presence of men in the workplace. Finally, Plaintiff has not offered facts suggesting that Hemphill was making sexual advances toward him or acting out of "sexual desire." There is no credible evidence, for example, that Hemphill is gay. See Hylko Dep. at 129, 142-3; Hemphill Dep. at 97. "Oncale requires 'credible evidence' of the harasser's sexual orientation in order to draw inferences based on it." Wasek v. Arrow Energy Servs., Inc., 682 F.3d 463, 468 (6th Cir. 2012).

Plaintiff has also failed to establish vicarious liability on the part of U.S. Steel. The test for determining U.S. Steel's liability depends upon whether

Hemphill is Plaintiff's co-worker or supervisor. See Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013). An employee is considered to be a "supervisor" under Title VII "only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. at 2443 (citation omitted).

Although Hemphill directed Plaintiff in his work activities, he is not a "supervisor" as contemplated by the Court in Vance. There is no evidence that Hemphill had the authority to take tangible employment actions against Plaintiff. Accordingly, the court considers U.S. Steel's liability under the co-worker test rather than the supervisor test.

To be liable for co-worker harassment, U.S. Steel must have had "either actual or constructive notice of the hostile work environment and failed to take prompt and adequate remedial action." Kalich v. AT & T Mobility, LLC, 679 F.3d 464, 474 (6th Cir. 2012). See also Elezovic v. Ford Motor Co., 472 Mich. 408 (2005); Waldo v. Consumers Energy Corp., 726 F.3d 802, 813 (6th Cir. 2013). "Generally, a response is adequate if it is reasonably calculated to end the harassment." Waldo, 726 F.3d at 814.

When Plaintiff reported Hemphill's harassment, U.S. Steel promptly investigated and took remedial action. Hemphill was suspended for a week without pay and demoted. Although Plaintiff argues that Hemphill's punishment was insufficient, U.S. Steel's response was objectively adequate, as evidenced by the fact that Plaintiff had no further problems with Hemphill.

For these reasons, the court finds that Plaintiff cannot sustain his hostile work environment claims against either Defendant. Nor can Plaintiff establish a constructive discharge claim, as he has not shown that Defendants "deliberately created intolerable working conditions" with the "intention of forcing" him to quit. See Regan v. Faurecia Auto. Seating, Inc., 679 F.3d 475, 481 (6th Cir. 2012). The court will grant summary judgment in favor of Defendants on Plaintiff's Title VII and ELCRA claims.

## III.    State Tort Claims

Plaintiff also asserts claims of assault, battery, and intentional infliction of emotional distress against Hemphill. Having disposed of Plaintiff's federal claim, the court will decline to exercise pendant jurisdiction over Plaintiff's remaining state claims. See 28 U.S.C. § 1367(c)(3); Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to

dismissing the state law claims."); Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

## ORDER

IT IS HEREBY ORDERED that U.S. Steel's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that John Hemphill's motion for summary judgment is GRANTED IN PART, consistent with this opinion and order.

IT IS FURTHER ORDERED that Plaintiff's claims of assault, battery, and intentional infliction of emotional distress are DISMISSED WITHOUT PREJUDICE.

                                                             s/John Corbett O'Meara
                                                             United States District Judge

Date: September 6, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, September 6, 2016, using the ECF system.

                                                             s/William Barkholz
                                                            Case Manager